RECEIPT #_____
AMOUNT $ 150—
SUMMONS ISSUED V-6
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK. /h
DATE 11-5-04

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CAROL M. WIDEMAN, | ) |
| Plaintiff, | ) |
| v. | ) |
| GRAND LODGE SERVICES, INC., THE MASTERS, WARDENS AND MEMBERS OF THE MOST WORSHIPFUL GRAND LODGE OF ANCIENT AND FREE ACCEPTED MASONS OF THE COMMONWEALTH OF MASSACHUSETTS, INC., THE MASONIC EDUCATION CHARITY TRUST, ROBERT PUGLISI, and ROGER PAGEAU | ) |
| Defendants. | ) |

04 12360

MAGISTRATE JUDGE_____

## COMPLAINT

### NATURE OF ACTION

As more specifically plead below, Plaintiff Carol M. Wideman brings this action for damages against the above-named Defendants for: (i) retaliation against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Massachusetts Fair Employment Practices Law, M.G.L. c. 151B, § 4, and in breach of her employment contract; (ii) discrimination against her on the basis of race in the terms and conditions of her employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Massachusetts Fair Employment Practices Law, M.G.L. c. 151B, § 4, and in breach of her employment contract; (iii) discrimination

against her on the basis of her sex, in violation of 42 U.S.C. § 2000e et seq., M.G.L. c. 151B, § 4, and in breach of her employment contract; and (iv) tortious interference with advantageous relations.

## PARTIES JURISDICTION AND VENUE

1. Plaintiff Carol M. Wideman (hereinafter "Ms. Wideman") is an African-American female residing in Suffolk County, Massachusetts.

2. Defendant Grand Lodge Services, Inc. ("GLS") is and was at all times relevant hereto a private employer located in Boston, Massachusetts.

3. Defendant The Masters, Wardens and Members of the Most Worshipful Grand Lodge of Ancient and Free Masons of the Commonwealth of Massachusetts, Inc. ("GLMM") is and was at all times relevant hereto a private employer located in Boston, Massachusetts.

4. Defendant The Masonic Education and Charity Trust ("MECT") is and was at all times relevant hereto a private entity located in Boston, Massachusetts.

5. Defendant Robert Puglisi ("Mr. Puglisi") (white, male) is a resident of the Commonwealth of Massachusetts. Mr. Puglisi was, at certain times relevant hereto, the Interim Chief Financial Officer of the Grand Lodge Defendants.

6. Defendant Roger Pageau ("Mr. Pageau") (white, male) is a resident of the Commonwealth of Massachusetts. Mr. Pageau was, at certain times relevant hereto, the Grand Treasurer of the Grand Lodge Defendants.

7. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States, and pendent jurisdiction for the related claims arising under state law.

Officer. Under this divided management structure, Mr. Pageau, as the Grand Treasurer, was the primary financial officer for the Grand Lodge Defendants and reported directly to the Grand Master, Donald Hicks. In turn, Mr. Puglisi, as the interim Chief Financial Officer, served as a functional supervisor within the Grand Treasurer's Office and reported to Mr. Pageau.

15. Upon information and belief, Mr. Huntoon was terminated for, *inter alia*, complaining about discrimination in the workplace. Specifically, he was terminated for protesting racial comments made about Ms. Wideman and for opposing the unlawful racial and gender based treatment of Ms. Wideman and other female members of the staff of the Grand Treasurer's Office.

16. Members of Ms. Wideman's staff, Nancy Rigano ("Ms. Rigano") (white, female) in accounts payable, Martina Bell ("Ms. Bell") (white, female) in accounts receivable, and Cheryl Voye ("Ms. Voye") (white, female), assistant to the Chief Financial Officer, supported Mr. Huntoon in his efforts to rid the workplace of discrimination by, among other things, writing letters to management.

17. Upon information and belief, Defendants Pageau and Puglisi refused to review Ms. Wideman's performance in 2002-2003 in retaliation for her association with Mr. Huntoon. Rather, they gave Ms. Wideman no performance feedback and declined to award her a raise in January 2004. Moreover, Ms. Rigano, who was responsible for human resources functions within the Grand Treasurer's Office, received no response from Mr. Puglisi after submitting performance review forms to him for Ms. Bell in October of 2003 and for Ms. Voye in November of 2003.

18. Upon information and belief, the Grand Lodge Defendants did award raises to Ms. Rigano and Ms. Bell -- younger, white employees who reported to Ms. Wideman.

19. On or about April 21, 2003, Mr. Puglisi informed the staff of the Grand Treasurer's Office that there would be no more overtime, even though members of other departments continued to be allowed to work overtime and receive overtime pay. Upon information and belief, members of the all male maintenance department continued to be allowed to take overtime and receive overtime pay in contrast to the all female staff members of the Grand Treasurer's Office. Previously, under Mr. Huntoon's management, the practice had been for staff in the Grand Treasurer's Office to initially confirm their operational need to work overtime with Ms. Wideman, who would approve the request and then submit it to Mr. Huntoon for final confirmation. Mr. Huntoon had never denied a request to work overtime to meet the department's operational needs.

20. Ms. Rigano, Ms. Bell, and Ms. Voye, all non-exempt employees eligible to receive overtime pay under the Fair Labor Standards Act and state law, were concerned about Mr. Puglisi's prohibition on overtime and complained to Ms. Wideman.

21. In or about May of 2003, Ms. Wideman, in support of Ms. Rigano, Ms. Bell, and Ms. Voye, took their complaints to Mr. Puglisi. In response, Mr. Puglisi indicated that he did not care if other departments were still receiving overtime and that he was only concerned with the Grand Treasurer's Office.

22. In or about August of 2003, Ms. Wideman raised additional concerns regarding Mr. Puglisi's attempt to provide written warnings to herself (despite the fact that she was an exempt employee), Ms. Rigano and Ms. Voye for supposedly violating the "meal time policy." The policy requires employees to take a thirty (30) minute lunch away from

their desks. Mr. Puglisi did not provide Ms. Wideman or her staff with any prior oral warning under the meal time policy.

23. Ms. Wideman expressed concern with Mr. Puglisi's insistence that she and her staff sign the written warnings, which he then intended to file separately from their personnel files (in violation with the requirements of M.G.L. c. 149, § 52C). Ms. Wideman informed Mr. Puglisi that he was required to keep such documents in her and her staff's personnel files and refused to sign the written warning. In response, Mr. Puglisi tore up her warning and threw it away. Ms. Rigano and Ms. Voye, however, signed their warnings and Ms. Wideman instructed them both to place a copy in their personnel files.

24. In January of 2004, Ms. Rigano, with Ms. Wideman present, complained to Mr. Puglisi about his failure to complete the annual performance review forms for Ms. Bell and Ms. Voye that she had previously given him in accordance with Grand Lodge's policy.

25. Mr. Puglisi responded to Ms. Rigano's concerns by indicating he had forwarded the annual performance reviews to Mr. Pageau for his consideration. A week later, Ms. Rigano asked Mr. Pageau about the status of the reviews and was informed that Mr. Pageau had never received any documentation from Mr. Puglisi.

26. Based on Mr. Puglisi's continued failure to adequately address the concerns of Ms. Wideman and her staff, Ms. Wideman requested to have a staff meeting with Mr. Pageau in or around the first week of February 2004. In response, Mr. Pageau told Ms. Wideman that he would speak with Mr. Puglisi and that Mr. Puglisi would get back to

her. Ms. Wideman then clarified that she and her staff wanted to have a meeting directly with Mr. Pageau.

27. Two weeks later, on or about February 19, 2004, Mr. Pageau had a meeting with both Mr. Puglisi and Mr. Arthur Johnson, the Grand Secretary of the Grand Lodge Defendants.

28. Immediately after the meeting, Mr. Pageau asked Ms. Wideman if the meeting she had previously requested could take place later that afternoon. In response, Ms. Wideman explained that she had increased responsibilities because of Ms. Rigano's scheduled vacation, and would not be able to meet until after Ms. Rigano returned on March 2, 2004.

29. The day after Ms. Rigano's return on March 3, 2004, Mr. Pageau informed Ms. Wideman that she would be terminated effective March 5, 2004 as a result of an alleged reduction in force.

30. Upon information and belief, shortly after Ms. Wideman's termination Grand Lodge appointed a white male named Greg McPherson ("Mr. McPherson"), who was also a member of the Masons, as the Chief Financial Officer. Upon information and belief, Mr. McPherson functionally assumed the responsibilities, tasks, and work assignments that were previously performed by Ms. Wideman as Controller. The Grand Lodge Defendants never notified Ms. Wideman of any opportunity for promotion with respect to the position of Chief Financial Officer and upon information and belief, the appointment of Mr. McPherson was done without any internal bidding and application for the position.

## COUNT I (Title VII - Retaliation Against the Grand Lodge Defendants)

31. Plaintiff Ms. Wideman re-alleges and incorporates herein by reference paragraphs 1 through 30 above.

32. Ms. Wideman timely met each of the administrative prerequisites under Title VII.

33. The Grand Lodge Defendants retaliated against Ms. Wideman in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. as a result of her association with Mr. Huntoon and because she supported members of her staff who themselves were retaliated against based on their support of Mr. Huntoon.

34. As a direct and proximate result thereof, Ms. Wideman has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputations, other financial losses, loss of community standing, and emotional distress and mental suffering.

## COUNT II (Title VII - Discrimination (Race) Against the Grand Lodge Defendants)

35. Plaintiff Ms. Wideman re-alleges and incorporates herein by reference paragraphs 1 through 34 above.

36. Ms. Wideman timely met each of the administrative prerequisites under Title VII.

37. The Grand Lodge Defendants discriminated against Ms. Wideman on the basis of her race by terminating her employment as Controller and functionally replacing her with Mr. McPherson, a white, male employee.

38. As a direct and proximate result thereof, Ms. Wideman has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputations,

other financial losses, loss of community standing, and emotional distress and mental suffering.

### COUNT III (Title VII - Discrimination (Sex) Against the Grand Lodge Defendants

39. Plaintiff Ms. Wideman re-alleges and incorporates herein by reference paragraphs 1 through 38 above.

40. Ms. Wideman timely met each of the administrative prerequisites under Title VII.

41. The Grand Lodge Defendants discriminated against Ms. Wideman on the basis of her gender by terminating her employment as Controller and functionally replacing her with Mr. McPherson, a white, male employee.

42. As a direct and proximate result thereof, Ms. Wideman has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputations, other financial losses, loss of community standing, and emotional distress and mental suffering.

### COUNT IV (M.G.L. c. 151B § 4 (Retaliation) Against All Defendants)

43. Plaintiff Ms. Wideman re-alleges and incorporates herein by reference paragraphs 1 through 42 above.

44. Ms. Wideman timely met each of the administrative prerequisites to suit under M.G.L. c. 151B.

45. All Defendants retaliated against Ms. Wideman in violation of M.G.L. c. 151B § 4(4) as a result of her association with Mr. Huntoon and because she supported members of her staff who themselves were retaliated against based on their support of Mr. Huntoon.

46.   Moreover, Defendants Mr. Puglisi, and Mr. Pageau aided and abetted in such retaliation and discrimination in violation of M.G.L. c. 151B § 4(5); and further violated the law by coercion, intimidation, threats, and/or interference with Ms. Wideman's rights in violation of M.G.L. c. 151 B § 4(4A).

47.   As a direct and proximate result thereof, Ms. Wideman has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputations, other financial losses, loss of community standing, and emotional distress and mental suffering.

## COUNT V (M.G.L. c. 151B § 4 (Race) Against All Defendants)

48.   Plaintiff Ms. Wideman alleges and incorporates herein by reference paragraphs 1 through 47 above.

49.   Ms. Wideman timely met each of the administrative prerequisites to suit under M.G.L. c. 151B.

50.   The Grand Lodge Defendants discriminated against Ms. Wideman on the basis of race by terminating her employment as Controller and functionally replacing her with Mr. McPherson, a white, male employee.

51.   Moreover, Defendants Mr. Puglisi, and Mr. Pageau aided and abetted in such retaliation and discrimination in violation of M.G.L. c. 151B § 4(5); and further violated the law by coercion, intimidation, threats, and/or interference with Ms. Wideman's rights in violation of M.G.L. c. 151 B § 4(4A).

52.   As a direct and proximate result thereof, Ms. Wideman has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment

benefits, loss of professional opportunities, loss of personal and professional reputations, other financial losses, loss of community standing, and emotional distress and mental suffering.

### COUNT VI (M.G.L. c. 151B § 4 (Sex) Against All Defendants)

53. Plaintiff Ms. Wideman alleges and incorporates herein by reference paragraphs 1 through 52 above.

54. Ms. Wideman timely met each of the administrative prerequisites to suit under M.G.L. c. 151B.

55. The Grand Lodge Defendants discriminated against Ms. Wideman on the basis of her gender by terminating her employment as Controller and functionally replacing her with Mr. McPherson, a white, male employee.

56. Moreover, Defendants Mr. Puglisi, and Mr. Pageau aided and abetted in such retaliation and discrimination in violation of M.G.L. c. 151B § 4(5); and further violated the law by coercion, intimidation, threats, and/or interference with Ms. Wideman's rights in violation of M.G.L. c. 151 B § 4(4A).

57. As a direct and proximate result thereof, Ms. Wideman has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputations, other financial losses, loss of community standing, and emotional distress and mental suffering.

### COUNT VII (Tortious Interference Against Mr. Puglisi)

58. Plaintiff Ms. Wideman alleges and incorporates herein by reference paragraphs 1 through 57 above.

59. Ms. Wideman had contractual/advantageous relationships with the Grand Lodge Defendants.

60. Defendant Mr. Puglisi had knowledge of these relationships.

61. Defendant Mr. Puglisi knowingly interfered with these relationships and did so with improper motive and /or by improper means.

62. As a direct and proximate result of the actions of Defendant Mr. Puglisi, Ms. Wideman has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputations, other financial losses, loss of community standing, and emotional distress and mental suffering.

## COUNT VIII (Tortious Interference Against Mr. Pageau)

63. Plaintiff Ms. Wideman alleges and incorporates herein by reference paragraphs 1 through 62 above.

64. Ms. Wideman had contractual/advantageous relationships with the Grand Lodge Defendants.

65. Defendant Mr. Pageau had knowledge of these relationships.

66. Defendant Mr. Pageau knowingly interfered with these relationships and did so with improper motive and /or by improper means.

67. As a direct and proximate result of the actions of Defendant Mr. Pageau, Ms. Wideman has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputations, other financial losses, loss of community standing, and emotional distress and mental suffering.

## COUNT IX (Breach of Contract - Against the Grand Lodge Defendants)

68. Plaintiff Ms. Wideman alleges and incorporates herein by reference paragraphs 1 through 67 above.

69. Ms. Wideman commenced work, or continued to work, for the Grand Lodge Defendants after or upon receiving and/or learning of the Grand Lodge Defendants' Employee Handbook. Article II (Human Resources), Section 1 (Equal Employment Opportunities) of the Employee Handbook (as revised in November of 2001) promises and represents that in all personnel decisions and actions, Grand Lodge is an equal opportunity employer and acts without regard to the race or sex of an individual.

70. Ms. Wideman reasonably relied on the representations made in the Employee Handbook in continuing her employment with the Grand Lodge Defendants.

71. By terminating Ms. Wideman in retaliation for her association with Mr. Huntoon and supporting her staff members who themselves opposed unlawful discriminatory actions the Grand Lodge Defendants breached the contract set out in the Employee Handbook. The Grand Lodge Defendants additionally breached their employment contract by discriminating against Ms. Wideman on the basis of her race and sex by functionally replacing her with Mr. McPherson.

72. As a direct and proximate result thereof, Ms. Wideman has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputations, other financial losses, loss of community standing, and emotional distress and mental suffering.

WHEREFORE, Plaintiff Carol M. Wideman requests as follows:

1. That Judgment be entered for Plaintiff and against Defendants, jointly and severally, for general and special damages in an amount to be proved at trial together with Plaintiff's reasonable attorneys' fees and costs as permitted by law;

2. That Judgment be entered for Plaintiff and against Defendants, jointly and severally, for Plaintiff's actual damages plus Plaintiff's cost and attorneys' fees pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and M.G.L. c. 151B; and

3. That Plaintiff have such other and further relief as this Court deems just and equitable.

## JURY CLAIM

THE PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

CAROL M. WIDEMAN
By her attorneys,

_____
Nancy S. Shilepsky, BBO#459080
Michael A. Bean, BBO#645962
Tanya K. Oldenhoff, BBO#651006
Perkins Smith & Cohen LLP
One Beacon Street, 30th Floor
Boston, Massachusetts 02108
(617) 854-4000

Dated: November ___, 2004