UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROL M. WIDEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>GRAND LODGE SERVICES, INC., THE MASTERS, WARDENS AND MEMBERS OF THE MOST WORSHIPFUL GRAND LODGE OF ANCIENT AND FREE ACCEPTED MASONS OF THE COMMONWEALTH OF MASSACHUSETTS, INC., THE MASONIC EDUCATION CHARITY TRUST, ROBERT PUGLISI and ROGER PAGEAU<br><br>    Defendants. | Civil Action No. 04-12360-REK |

## ANSWER OF DEFENDANTS, GRAND LODGE SERVICES, INC. AND ROGER PAGEAU, TO PLAINTIFF'S COMPLAINT

Defendants, Grand Lodge Services, Inc. and Roger Pageau (hereinafter collectively referred to as "GLS"), hereby respond to Plaintiff's Complaint as follows:

### NATURE OF ACTION

The first paragraph of Plaintiff's Complaint constitutes an introduction and contains conclusions of law to which no response is required. To the extent a response is warranted, GLS denies the allegations contained in this introductory paragraph.

### PARTIES JURISDICTION AND VENUE

1.   GLS admits that Plaintiff is an African-American female and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1.

- 2 -

2. To the extent paragraph 2 contains conclusions of law, GLS states that no response is required. Further responding, GLS admits that Grand Lodge Services, Inc. is located in Boston, Massachusetts and employed Ms. Wideman.

3. GLS denies the allegations in paragraph 3.

4. GLS admits that The Masonic Education and Charity Trust ("MECT") is located in Boston, Massachusetts and otherwise denies the allegations in paragraph 4.

5. GLS admits that Mr. Puglisi is a white male and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of paragraph 5. GLS states that Mr. Puglisi, at certain times relevant hereto, functioned as interim chief financial officer at GLS. GLS denies the remaining allegations in paragraph 5.

6. GLS admits the allegations in the first sentence of paragraph 6. GLS states that Mr. Pageau was, at certain times relevant hereto, the Treasurer of Grand Lodge Services, Inc. GLS denies the remaining allegations of paragraph 6.

7. GLS states that Paragraph 7 contains conclusions of law to which no response is required.

**FACTS COMMON TO ALL COUNTS**

8. GLS admits the allegations in the first sentence of paragraph 8, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8.

9. GLS denies the allegations in paragraph 9, except admits that Ms. Wideman began working for Grand Lodge Services, Inc. in September 2000 as Accounting Manager, reporting to the then Grand Treasurer and Chief Financial Officer, Mr. Christopher Huntoon, a white male.

10. GLS admits that Plaintiff received a handbook bearing the date November 2001 at some point during her employment. GLS denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10.

11. GLS states that Plaintiff was hired as Accounting Manager, at some point Mr. Huntoon gave Plaintiff the title of Controller, and further states that Ms. Wideman was employed by GLS through March 5, 2004. GLS denies the remaining allegations in paragraph 11.

12. GLS admits that Plaintiff received two performance evaluations, one for the year September 2000-September 2001, and one for the year September 2001-September 2002, and GLS states that Plaintiff's performance evaluations are documents which speak for themselves.

13. GLS states that Ms. Wideman received a salary adjustment and pay increase in January 2002, retroactive to September 2001 in the aggregate amount of $13,100, and further states that she received a 7% pay increase, effective September 2002. GLS denies the remaining allegations in paragraph 13.

14. GLS admits that Mr. Huntoon, who had hired Plaintiff, was terminated from employment in March 2003. GLS states that following his termination, Mr. Huntoon's duties were generally performed by Mr. Pageau, Grand Treasurer, and Mr. Puglisi, who functioned as interim chief financial officer. GLS further states that Mr. Pageau reported to the Grand Master, Donald G. Hicks, Jr., and that Puglisi reported to Mr. Pageau and supervised Ms. Wideman. GLS denies the remaining allegations in paragraph 14.

15. GLS denies the allegations in paragraph 15.

16. GLS admits that Ms. Rigano is a white female who worked in accounts payable, Ms. Bell is a white female who worked in accounts receivable and Ms. Voye is a white female who worked as an administrative assistant. GLS admits that Ms. Rigano and Ms. Bell

reported to Ms. Wideman. GLS states that Ms. Rigano, Ms. Bell and Ms. Voye wrote letters in February 2003, states that those letters are documents which speak for themselves and otherwise denies the remaining allegations in paragraph 16.

17.    GLS denies the allegations in paragraph 17, except admits that Ms. Wideman did not receive a raise in January 2004.

18.    GLS admits that Ms. Rigano and Ms. Bell are white employees who reported to Ms. Wideman, states that Ms. Bell received a raise on or about March 31, 2004, admits that Ms. Rigano and Ms. Bell are younger than Ms. Wideman, and otherwise denies the allegations in paragraph 18.

19.    GLS states that in April 2004, Mr. Puglisi informed Ms. Rigano and Ms. Bell that they needed to obtain approval from him before they could work overtime, states that from time to time, employees in the maintenance department have received approval from their supervisor to work overtime, and otherwise denies the allegations in the first two sentences in paragraph 19. GLS further states that during Mr. Huntoon's employment at GLS, staff in the Grand Treasurer's office frequently worked overtime hours, and says it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the last two sentences in paragraph 19.

20.    GLS states it is without knowledge or information sufficient to form a belief as to whether Ms. Rigano, Ms. Bell and Ms. Voye complained to Ms. Wideman about the overtime policy, denies that Ms. Puglisi prohibited overtime, and states that the remaining allegations in paragraph 20 contains conclusions of law to which no response is required.

21.    GLS states that Mr. Puglisi informed Ms. Wideman, Ms. Bell and Ms. Voye that whether employees in other departments were working overtime was not relevant to whether

there was a need for overtime in the Grand Treasurer's office and otherwise denies the remaining allegations in paragraph 21.

22. GLS states that Mr. Puglisi documented a conversation with Ms. Wideman regarding the fact that Ms. Wideman, Ms. Rigano and Ms. Voye would frequently eat lunch at their desks and not take a meal break of 30 consecutive minutes. Ms. Wideman refused to sign Mr. Puglisi's written documentation of this conversation. GLS further states that its meal break policy is set forth in a written document which speaks for itself and otherwise denies the remaining allegations in paragraph 22.

23. GLS states that Ms. Wideman expressed unhappiness with the directive requiring that she, Ms. Rigano and Ms. Voye follow the meal break policy, and states that the remaining allegations in the first sentence of Paragraph 23 constitute a conclusion of law to which no response is required. GLS further states that Ms. Wideman informed Mr. Puglisi that if she were to sign the written documentation, the document would become part of her personnel file and she refused to sign it. GLS admits that Mr. Puglisi discarded the written document regarding Ms. Wideman. GLS admits that Ms. Rigano and Ms. Voye did sign the written documentation of the conversation regarding meal times. GLS denies knowledge or information sufficient to form a belief as to whether Ms. Wideman instructed Ms. Rigano and Ms. Voye to place the documentation they signed in their personnel files. GLS denies the remaining allegations in paragraph 23.

24. GLS denies the allegations in paragraph 24, except states that Ms. Rigano mentioned to Mr. Puglisi that Ms. Bell's and Ms. Voye's performance reviews were due.

25. GLS denies the allegations in paragraph 25, except states that Ms. Rigano asked Mr. Pageau about performance reviews and Mr. Pageau informed Ms. Rigano that he would discuss the matter with Mr. Puglisi.

26. GLS denies the allegations in paragraph 26, except states that Ms. Wideman requested that Mr. Pageau schedule a meeting with her, that Mr. Pageau responded that he would ask Mr. Puglisi to arrange a meeting, that Ms. Wideman then indicated that she did not want Mr. Puglisi to attend the meeting, and Mr. Pageau stated that he would meet with her after he returned from vacation.

27. GLS denies the allegations in paragraph 27, except states that Mr. Pageau often met with Mr. Puglisi and Mr. Johnson in connection with fulfilling his job duties.

28. GLS denies the allegations in paragraph 28, except admits that Mr. Pageau attempted to schedule a meeting in accordance with Ms. Wideman's request, but Ms. Wideman responded that she did not want to have such a meeting until after Ms. Rigano returned from vacation.

29. GLS states that on or about March 3, 2004, Mr. Pageau informed Ms. Wideman that her employment would terminate effective March 5, 2004 as the result of a restructuring and reduction in force in the Grand Treasurer's Office. GLS denies the remaining allegations in paragraph 29.

30. GLS states that Grand Lodge Services, Inc. hired Mr. MacPherson in March 2004, as Assistant Grand Treasurer. GLS further states that neither Ms. Wideman nor any other GLS employees in the Grand Treasurer's Office were qualified to be Chief Financial Officer and no opportunity for promotion to the position of Chief Financial Officer existed within the Grand Treasurer's Office. GLS denies the remaining allegations of paragraph 30.

**COUNT I (Title VII – Retaliation Against the Grand Lodge Defendants)**

31. GLS incorporates and realleges its responses to paragraphs 1-30 above and incorporates them herein by reference.

32. GLS denies the allegations in paragraph 32.

33. GLS denies the allegations in paragraph 33.

34. GLS denies the allegations in paragraph 34

**COUNT II (Title VII – Discrimination (Race) Against the Grand Lodge Defendants)**

35. GLS incorporates and realleges its responses to paragraphs 1-34 above and incorporates them herein by reference.

36. GLS denies the allegations in paragraph 36.

37. GLS denies the allegations in paragraph 37.

38. GLS denies the allegations in paragraph 38.

**COUNT III (Title VII – Discrimination (Sex) Against the Grand Lodge Defendants)**

39. GLS incorporates and realleges its responses to paragraphs 1-38 above and incorporates them herein by reference.

40. GLS denies the allegations in paragraph 40.

41. GLS denies the allegations in paragraph 41.

42. GLS denies the allegations in paragraph 42.

**COUNT IV (M.G.L. c. 151B § 4 (Retaliation) Against All Defendants)**

43. GLS incorporates and realleges its responses to paragraphs 1-42 above and incorporates them herein by reference.

44. GLS denies the allegations in paragraph 44.

45. GLS denies the allegations in paragraph 45.

46. GLS denies the allegations in paragraph 46.

47. GLS denies the allegations in paragraph 47.

### COUNT V (M.G.L. c. 151B § 4 (Race) Against All Defendants)

48. GLS incorporates and realleges its responses to paragraphs 1-47 above and incorporates them herein by reference.

49. GLS denies the allegations in paragraph 49.

50. GLS denies the allegations in paragraph 50.

51. GLS denies the allegations in paragraph 51.

52. GLS denies the allegations in paragraph 52

### COUNT VI (M.G.L. c. 151B (Sex) Against All Defendants)

53. GLS incorporates and realleges its responses to paragraphs 1-52 above and incorporates them herein by reference.

54. GLS denies the allegations in paragraph 54.

55. GLS denies the allegations in paragraph 55.

56. GLS denies the allegations in paragraph 56.

57. GLS denies the allegations in paragraph 57.

### COUNT VII (Tortious Interference Against Mr. Puglisi)

58. GLS incorporates and realleges its responses to paragraphs 1-57 above and incorporates them herein by reference.

59. Count VII is not directed at GLS and therefore no response is required of GLS. To the extent a response is required, GLS denies the allegations in paragraph 59.

60. Count VII is not directed at GLS and therefore no response is required of GLS. To the extent a response is required, GLS denies the allegations in paragraph 60.

61. Count VII is not directed at GLS and therefore no response is required of GLS. To the extent a response is required, GLS denies the allegations in paragraph 61.

62. Count VII is not directed at GLS and therefore no response is required of GLS. To the extent a response is required, GLS denies the allegations in paragraph 62.

### COUNT VIII (Tortious Interference Against Mr. Pageau)

63. GLS incorporates and realleges its responses to paragraphs 1-62 above and incorporates them herein by reference.

64. GLS denies the allegations in paragraph 64.

65. GLS denies the allegations in paragraph 65.

66. GLS denies the allegations in paragraph 66.

67. GLS denies the allegations in paragraph 67

### COUNT IX (Breach of Contract – Against the Grand Lodge Defendants)

68. GLS incorporates and realleges its responses to paragraphs 1-68 above and incorporates them herein by reference.

69. GLS admits that Ms. Wideman received a copy of its handbook. Further responding, GLS states that the handbook is a document which speaks for itself and otherwise denies the allegations in paragraph 69.

70. GLS denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70.

71. GLS denies the allegations in paragraph 71.

72. GLS denies the allegations in paragraph 72.

### First Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Any claim for breach of contract is barred because of a failure of a consideration.

### Third Affirmative Defense

To the extent Plaintiff alleges a contract with GLS, her claims for breach of contract by GLS are barred due to Plaintiff's breach of contract.

### Fourth Affirmative Defense

Plaintiff's claims for damages are barred, in whole or in part, by her failure to mitigate damages.

### Fifth Affirmative Defense

Plaintiff's claims are barred by the doctrines of waiver, estoppel and/or unclean hands.

### Sixth Affirmative Defense

Plaintiff's claims are barred in whole, or in part, by the applicable statutes of limitations.

### Seventh Affirmative Defense

Every action Grand Lodge Services, Inc. took with respect to Plaintiff's employment was taken for a legitimate business reason.

### Eighth Affirmative Defense

All actions Pageau took with respect to Plaintiff's employment were within the scope of performing his responsibilities for Grand Lodge Services, Inc. and are therefore privileged.

### Ninth Affirmative Defense

Plaintiff is not entitled to a trial by jury on all claims asserted.

**Tenth Affirmative Defense**

Plaintiff's claims are barred in whole, or in part, by her failure to exhaust her administrative remedies.

**Eleventh Affirmative Defense**

Plaintiff's contract claim is barred by her failure to pursue her internal remedies.

**Twelfth Affirmative Defense**

Defendants at all times made good faith efforts to comply with their obligations under the state and federal employment discrimination statutes.

**Thirteenth Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by her failure to file a timely charge of discrimination.

**Fourteenth Affirmative Defense**

Plaintiff's claim are barred, in part, because G.L. Chapter 151B provides the exclusive state remedy for the claims made.

WHEREFORE, Grand Lodge Services, Inc. and Pageau respectfully request that:

1. The Court dismiss the Complaint in its entirety;

2. The Court enter judgment for Grand Lodge Services, Inc. and Pageau; and

3.      The Court enter such other relief as may be just and proper.

Respectfully submitted,

GRAND LODGE SERVICES, INC.
and ROGER PAGEAU,
By their attorneys,

          **/s/**
David J. Kerman (BBO# 269370)
Samia M. Kirmani (BBO#634699)
JACKSON LEWIS LLP
75 Park Plaza
Boston, Massachusetts 02116

Dated: December 15, 2004          (617) 367-0025; FAX: (617) 367-2155

## **CERTIFICATE OF SERVICE**

     I hereby certify that, on this 15th day of December, 2004, I caused a true and accurate copy of the above document to be served upon Plaintiff's counsel, James Hamilton, Perkins, Smith & Cohen, One Beacon Street, Boston, MA. 02108 by first-class mail, postage prepaid.

          **/s/**
Jackson Lewis LLP